[Cite as *In re K.S.*, 2011-Ohio-4511.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96398

## IN RE: K.S.

## A Minor Child

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Juvenile Division of
Cuyahoga County Court of Common Pleas
Case No. DL 10117412

**BEFORE:**    Blackmon, P.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:**          September 8, 2011

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio State Public Defender

By: Sheryl A. Trzaska
Ohio State Assistant Public Defender
Ohio Public Defender's Office
250 East Broad Street, Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Justin Seabury Gould
Assistant County Prosecutor
2210 Cedar Avenue, 3rd Floor
Cleveland, Ohio 44115

PATRICIA ANN BLACKMON, P.J.:

**{¶ 1}** Appellant K.S.[1] appeals the juvenile court's judgment finding him delinquent for committing one count of felonious assault with one-and three-year firearm specifications. He assigns the following error for our review:

> **"[K.S.'s] adjudications for felonious assault and the corresponding firearm specifications were against the manifest weight of the evidence, in violation of [K.S.'s] right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, and Section 10, Article 1 of the Ohio Constitution."**

**{¶ 2}** Having reviewed the facts and relevant law, we affirm the trial court's decision. The apposite facts follow.

### Facts

**{¶ 3}** On September 16, 2010, a crowd of teenagers were fighting in front of the home of Edna Hamilton ("Edna"). Edna's adult son, Wayne Hamilton ("Wayne"), attempted to break up the fight and disperse the crowd. 14-year old K.S. was part of the crowd as was his brother C.S. C.S. was pulling on Wayne's niece, so Wayne pulled C.S. off of her. Wayne claims he then fell on top of C.S., slamming him to the ground.

**{¶ 4}** While Wayne was on the ground, another teenager hit him on the back of the head with what felt like a pistol. Wayne got up and asked "who the F hit me?" He was bleeding badly and went inside his mother's home.

---

[1]We refer to the non-adult parties in this case by their initials pursuant to this court's policy of not revealing the identity of juvenile defendants as well as other non-adult parties.

He took off his T-shirt and held it to his head and returned outside to tell the crowd to go home. He observed C.S. and K.S. talking and heard C.S. say something about his earring. Then K.S. approached Wayne and said, "I don't know you big dude." Wayne told K.S. to go home. He then felt something hit him in the face below his right eye. After he was hit, he saw K.S. shoot his gun three or four times in the air. The hit to his eye fractured his orbital bone, requiring surgery.

{¶ 5} Wayne's mother, Edna, also testified that Wayne fell on top of C.S. She observed another teenager hit her son in the back of the head. She could not see what was used. She stated that about ten minutes later, she observed K.S. walking from the direction of his house. He shot a gun in the air twice and asked, "Who wants some of me?" She then observed C.S. and K.S. talking and heard C.S. state, "Who was that big nigger that slammed me on the ground? He slammed me for no reason." She also heard C.S. complain that one of his earrings was broken.

{¶ 6} K.S. then approached Wayne and Edna heard him say, "Did you jump my brother?" Wayne tried to explain that it was an accident. Edna said K.S. appeared to walk away, but he then turned and said, "F you" and hit her son just below his right eye with a black gun and ran from the scene.

{¶ 7} Officer Thelemon Powell responded to the radio broadcast that a male was assaulted. When he got to the scene, there was a large crowd of

people, and EMS was attending to Wayne. Wayne told him he was trying to break up the fight and was struck with a pistol. He was not able to provide him with the name of his assailant but gave the officer a description. Other people provided the officer with the assailant's name and pointed to the house where he lived. The officer proceeded to the home, but no one responded. The officer retrieved three to five shell casings in the area around the home.

{¶ 8} In K.S.'s defense, P.P. testified that she, her mother, and K.S. were all standing on the curb watching the fight. She did not see Wayne get hit and did not see who shot the gun. When the shots were fired, she and her mother ran away from the scene. K.S. stayed behind. P.P.'s mother advised him to stay away from the fight.

{¶ 9} K.S.'s mother testified that she saw Wayne grab C.S. and slam him to the ground. She did not see Wayne get assaulted. She stated that, although the fight started in front of Edna's home, the fight moved a few houses down as it progressed. When she heard the shots fired, K.S. was not with her. She stated that K.S. was arrested the next day at another fight.

{¶ 10} The trial court found K.S. to be delinquent and committed K.S. to the Ohio Department of Youth Services for one year for the felonious assault offense and one year for the firearm specifications, to be served consecutively, and not to exceed his twenty-first birthday.

## Manifest Weight of the Evidence

{¶ 11} In his sole assigned error, K.S. argues his conviction was against the manifest weight of the evidence.

{¶ 12} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> **"The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386–387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72   L.Ed.2d 652."**

{¶ 13} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."   *State v. Thompkins*

(1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

{¶ 14} In the instant case, Edna Hamilton was the only person to testify that she saw K.S. hit Wayne with the gun. K.S. argues her testimony is not credible because it conflicts with Wayne's and the defense witnesses' testimony. We conclude the trial court did not lose its way in resolving the alleged conflicting evidence.

{¶ 15} Although Wayne's and Edna's testimony differed regarding what K.S. said to Wayne prior to hitting him, the substance of their testimony was the same. That is, K.S. confronted Wayne for slamming his brother to the ground. Both Wayne and Edna also testified that C.S. complained to K.S. about his earring being broken. Wayne did not hear K.S. say "F you" prior to K.S. hitting him with the gun; however, this is not surprising since Wayne's attention was elsewhere as he did not see K.S. hit him. Moreover, Edna stated that it appeared that K.S. was going to walk away; therefore, it would be reasonable for Wayne to have focused elsewhere believing the confrontation was over.

{¶ 16} While Wayne's and Edna's testimony regarding when the gunshots were fired also differed, both agreed that K.S. was not aiming at anyone when he fired the shots. Wayne testified that K.S. fired the gun

several times in the air after he was hit, and Edna testified that K.S. fired the gun before hitting Wayne. The fact that Wayne's recollection of the timing of the shooting differed from Edna's is not critical to Edna's credibility, especially because Wayne was suffering from a head injury at the time.

{¶ 17} Moreover, the officer's finding the shell casings near K.S.'s home supports Edna's testimony that K.S. shot his gun in the air several times while walking from the direction of his home. K.S.'s mother also testified that although the fight started in front of Edna's house, it progressed down the street, which would correlate with the shells being found further from Edna's house.

{¶ 18} K.S. also argues Edna's and Wayne's testimony is suspect given the fact that his family had been fighting with their family for months; however, there is nothing in the evidence to support this allegation. K.S.'s mother testified that the fighting had been going on all summer, but she did not clarify who was fighting.

{¶ 19} Finally, none of K.S.'s witnesses testified to observing the attack on Wayne. Also, although they testified that K.S. was with them watching the fight, once the shots were fired, no one could testify to where K.S. went. P.P. testified that she and her mother fled after the shots, but that K.S. stayed behind.

{¶ 20} Based on the evidence presented, we conclude the trial court did not lose its way in resolving the conflicting evidence and concluding that K.S. was delinquent. A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. A jury, as finder of fact, may believe all, part, or none of a witness's testimony. *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096; *State v. Hairston* (1989), 63 Ohio App.3d 58, 577 N.E.2d 1144; *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible. See *Seasons Coal Co. v. Cleveland* (1994), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. Thus, the trial court could choose to believe Wayne's, Edna's, and the defense witnesses' testimony in whole or in part in arriving at its verdict.

{¶ 21} The trial court obviously believed Edna's version of events because after the defense completed closing arguments, the trial court stated that, although defense counsel argued no one positively identified K.S., Edna testified that she saw K.S. hit Wayne. Accordingly, K.S.'s sole assigned error is overruled.

{¶ 22} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. The finding of delinquency having been affirmed, any bail or stay of execution pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, J., CONCUR